[No. 55702-5-I.   Division One.   August 29, 2005.]

Michael Parsons et al., *Appellants*, v. The Department of Social and Health Services et al., *Respondents*.

*Philip A. Talmadge* (of *Talmadge Law Group, P.L.L.C.*), *Michael L. Johnson*, and *Edward E. Younglove III*, for appellants.

*Robert M. McKenna, Attorney General*, and *William L. Williams* and *Edward J. Dee, Assistants*, for respondents.

*Deborah A. Dorfman* and *Julie L. Wilchins* on behalf of Washington Protection and Advocacy System, amicus curiae.

¶1 ELLINGTON, A.C.J. — Downsizing an institution is not the same as closing it. Because the Department of Social and Health Services (Department) acted within the scope of its statutory authority in reducing the number of residents at Fircrest School, its actions were not ultra vires or unconstitutional and the trial court properly dismissed this suit. We also affirm the trial court's decision to permit the Washington Protection and Advocacy System to participate as amicus.

## Background

¶2 Fircrest School is one of five permanent residential habilitation centers (RHCs) established by statute for persons with developmental disabilities.[1] RHCs "provide for those children and adults who are exceptional in their needs for care, treatment, and education by reason of developmental disabilities."[2]

¶3 In the early 1970s, the total number of RHC residents in Washington was more than 4,000. It is now slightly more than 1,000, due principally to trends favoring community-based programs.[3] The Fircrest population has similarly declined.

¶4 In 2003, Engrossed Senate Bill (ESB) 5971 was introduced in the legislature. The bill recognized that "changing social attitudes and family preferences have shifted the demand for services from state institutions to community living."[4] ESB 5971 would have closed Fircrest by 2005:

---

[1] RCW 71A.20.020.

[2] RCW 71A.20.010.

[3] Under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213, states must place persons with disabilities in community settings rather than institutions whenever clinically appropriate, so long as the resident does not oppose the transfer and placements can be reasonably accommodated. *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 119 S. Ct. 2176, 144 L. Ed. 2d 540 (1999).

[4] ESB 5971, 58th Leg., Reg. Sess. (Wash. 2003).

In order to improve the cost-efficiency of care at residential habilitation centers and begin to shift resources to expand community services, Fircrest School shall be closed during the 2003-2005 biennium. The secretary of social and health services shall develop and implement a transition plan that ensures that residents of Fircrest School shall be offered the choice of services at another residential habilitation center, community services, or, if appropriate, services in a skilled nursing facility.[5]

¶5 The bill did not pass. But the legislature made several budget allocations for costs associated with reducing the size of Fircrest, including $2.472 million "solely for transition costs associated with the downsizing effort at Fircrest School," to be organized "so as to minimize disruption to clients, employees, and the developmental disabilities program."[6] The legislature provided funds for a consultant to "prepare options and recommended investment strategies for surplus property at the five state residential habilitation centers . . . . [F]or the Fircrest school property, the contractor shall identify an investment strategy that will produce a long-term investment return on the property, without sale of the land."[7] The legislature funded an assessment of elderly RHC residents as to the propriety of less restrictive settings.[8] The legislature also appropriated funds for RHC consolidation.[9] Budget notes prepared by the Legislative Evaluation and Accountability Committee indicate that the budget called for the Department to "consolidate RHC vacancies across the five state facilities in order to downsize Fircrest School."[10]

¶6 After the legislative session, the Department announced it was implementing the downsizing of Fircrest in

---

[5] *Id.*

[6] Laws of 2003, 58th Leg., 1st Sp. Sess., ch. 25, § 211.

[7] *Id.* § 136.

[8] *Id.* § 206(7).

[9] *Id.* ch. 26, § 229.

[10] 2003 Washington State Legislative Budget Notes, http://leap.leg.wa.gov/leap/budget/lbns/2003dshs.pdf.

anticipation of eventual closure and developed a transition plan for closing Fircrest within three years. Some residents were transferred to other institutions beginning in early 2004; others were transferred to different locations at Fircrest so that cottages could be closed.

¶7 This action was filed in December 2003. Michael Parsons, Randolph Getchman and Gladys Barker (Parsons) are persons with profound mental retardation, who then lived at Fircrest.[11] James and Alice Hardman are their court-appointed guardians. The Washington Federation of State Employees represents Fircrest employees. The union and the Hardmans, on behalf of Parsons, challenged the Department's actions to downsize Fircrest, arguing its actions were steps toward closure, not just downsizing, and that the budget allocations for the downsizing effort contained substantive policy contradicting enacted statutes, in violation of the Washington Constitution. Parsons sought declaratory and injunctive relief.

¶8 Washington Protection and Advocacy System (WPAS) is a nonprofit organization designated by the governor to protect and advocate for persons with disabilities. WPAS moved to appear as a friend of the trial court, to address "important issues regarding the positive effects of deinstitutionalization on individuals with developmental disabilities."[12] Parsons objected, but the trial court allowed WPAS to appear and file a brief, in which it argued that the Department's "actions to downsize and possibly close Fircrest [were] supported by the relevant expert clinical literature in the field and [were] consistent with relevant federal and state laws."[13] WPAS attached various materials to its brief, including reports and studies relating to deinstitutionalization of persons with intellectual disabilities.

---

[11] These residents have since been transferred over the objections of their guardians.

[12] Clerk's Papers at 569.

[13] *Id.* at 818.

¶9 Parsons sought partial summary judgment declaring that portions of the budget bills were invalid and that the downsizing steps taken by the Department were ultra vires. The trial court denied the motion. The Supreme Court denied discretionary review. Parsons then asked the trial court to dismiss his remaining claims without prejudice, and the Department was granted summary judgment dismissing the ultra vires and constitutional claims. Parsons filed this appeal.

## *Discussion*

¶10 Parsons points out that the Department has only the power the legislature gives it and that nothing in the budget bills specifically directed the Department "to *implement* downsizing."[14] It is true that the powers of state agencies are determined by the legislature.[15] It is also true that the budget bills did not expressly direct the Department to transfer residents away from Fircrest. The bills make clear, however, that the legislature expected that Fircrest would be downsized. There could be no other purpose for the appropriation of "transition costs associated with the downsizing effort at Fircrest school."[16]

¶11 But the validity of the 2003 budget bills is not the question, because budget bills are not the source of the Department's power to downsize RHCs. The legislature long ago invested the secretary of the Department with wide latitude to manage social and health services in the state. The legislature placed

the internal affairs of the department under the control of the secretary to institute the flexible, alert and intelligent management of its business that changing contemporary circumstances require .... [W]henever the secretary's authority is

---

[14] Appellant's Br. at 25.

[15] *Murphy v. State*, 115 Wn. App. 297, 317, 62 P.3d 533 (2003), *cert. denied*, 541 U.S. 1087 (2004).

[16] Laws of 2003, 58th Leg., 1st Sp. Sess., ch. 25, § 211.

not specifically limited by law, he or she shall have complete charge and supervisory powers over the department.[17]

¶12 Additionally, the secretary has a duty to be fiscally responsible, by acting to "promote efficient public management, to improve programs, and to take full advantage of the economies, both fiscal and administrative, to be gained from the consolidation of . . . institutions."[18] Finally, the secretary has authority to determine the maximum capacity of RHCs.[19]

¶13 These broad grants of authority easily encompass the discretion to downsize Fircrest without express legislative directive. Fircrest is established by statute as a permanent RHC and therefore cannot be closed without legislative direction, but nothing in the statutes requires that it be maintained in a static condition. Closing cottages and moving Fircrest residents to other RHCs are steps within the Department's authority. The Department's actions were not ultra vires.

¶14 The Department's frank admission that it expects Fircrest to be closed in the near future has not been shown to be anything more than a prediction that *the legislature* will close Fircrest. So far, the Department has done nothing more than downsize Fircrest and consolidate RHCs. As Parsons points out, reducing population would be necessary for closure. But reducing population is also necessary for downsizing and consolidating. If there is a point at which the institution's population would become so small as to permit an inference of inevitable closure, Parsons has not established what that point would be, and there is no indication that point has been reached at present.

¶15 Parsons contends that if the budget bills gave the Department the authority to downsize or close Fircrest, conferring that authority in budget bills violated article II, sections 19 and 37 of the Washington Constitution. Because

---

[17] RCW 43.20A.050.

[18] RCW 43.20A.060.

[19] RCW 71A.20.090.

the budget bills do not purport to authorize closure, and are only the source of funds—not the source of authority—for downsizing, we address these arguments only briefly.

¶16 Article II, section 19 of the Washington Constitution provides that "[n]o bill shall embrace more than one subject, and that shall be expressed in the title." The legislature has greater latitude under section 19 in appropriations bills, because budget bills allocate funds to a number of state needs. An appropriations bill violates the single subject rule if it is substantive, i.e., if it defines rights or alters existing law.[20] Indicators of the presence of substantive content include whether (1) the bill's subject has been treated in a separate substantive bill in the past, (2) its duration extends beyond the two-year budget period, or (3) the policy defines rights or eligibility for services.[21]

¶17 The budget bills in this case were not substantive. Fircrest's size has not been the subject of separate legislation, the budget bills do not effect changes beyond the two-year budget period, and the bills do not define rights or eligibility for services. They do not violate article II, section 19.

¶18 Article II, section 37 requires that an "act revised or [a] section amended shall be set forth at full length." Section 37 is intended to protect the public from fraud and deception.[22] If an act is complete and stands alone on the subject it treats, it is exempt from the requirements of section 37.[23] An act is not complete if it changes the scope or effect of an earlier statute.[24]

¶19 Parsons argues that the budget legislation amended both RCW 71A.20.020, which establishes Fircrest as a permanent facility, and RCW 71A.16.010(1), which grants

---

[20] *Retired Pub. Employees Council of Wash. v. Charles*, 148 Wn.2d 602, 629, 62 P.3d 470 (2003).

[21] *Id.*

[22] *Id.* at 631.

[23] *Id.*

[24] *Id.* at 632.

persons with developmental disabilities the opportunity to choose where they live. But the budget bills did not change the scope or effect of either of those statutes. The budget provisions did not require the Department to close Fircrest or affect the ability of persons with developmental disabilities to exercise choice as to where they live.

¶20 Lastly, Parsons assigns error to the trial court's decision to permit WPAS to participate as amicus,[25] arguing that the court should have required WPAS to intervene. Parsons also objects that WPAS improperly submitted evidence, not just argument, and contends the court improperly relied upon this evidence in denying Parsons' motion for summary judgment.

¶21 No specific rule permits amicus participation in the trial court, but neither is there any rule prohibiting it. We can see no reason a trial judge should not have discretion to permit such participation if it may be helpful to the court. Other trial courts have allowed amici, and Parsons has presented no authority disapproving the practice. Nor does he present authority that would require an interested party such as WPAS to intervene, as opposed to filing as amicus. As to the propriety of submitting articles and other supporting material, we note that in the appellate courts, amici often provide broad background by way of reference to studies or articles. We are confident the trial courts are equally able to sort out what materials are proper for the court's consideration. Further, even if the materials were somehow improper evidence, the summary judgment motion did not turn on disputed questions of fact. The trial court did not abuse its discretion when it allowed WPAS to participate.

¶22 Given our disposition, we deny Parsons' request for attorney fees on appeal.

---

[25] We granted WPAS leave to file an amicus brief on appeal in support of the Department. Parsons filed a response, to which WPAS replied. Parsons moved to strike the reply brief. We agree that the reply brief was improper, and grant Parsons' motion to strike.

*Conclusion*

¶23 We hold that the Department acted within its authority when it took steps to downsize Fircrest, that the budget bills were not unconstitutional, and that the trial court did not err in permitting WPAS to participate as a friend of the court. The decision of the trial court is affirmed in all respects.

COLEMAN and GROSSE, JJ., concur.

Review denied at 157 Wn.2d 1004 (2006).